IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Georgia Bank & Trust Company of Augusta, as personal representative of the estate of Thomas D. McPherson, | ) ) ) ) | C/A No.: 3:08-2371-JFA |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Frank T. Trenery, Jr., | ) ) | **ORDER** |
| Defendant, | ) ) | |
| and | ) ) | |
| MobileCare Health Services, LLC, | ) ) | |
| Intervenor. | ) ) | |

Through this action, plaintiff Georgia Bank & Trust Company of Augusta ("Georgia Bank"), as personal representative of the estate of Thomas D. McPherson ("McPherson"), seeks to recover damages from defendant Frank T. Trenery, Jr. ("Trenery") arising out of Trenery's management of Mobilecare Health Services, LLC ("Mobilecare"), a Georgia limited liability company in which McPherson and Trenery were both members. Trenery and Mobilecare have in turn asserted numerous counterclaims, in the vein of mismanagement, misappropriation of funds, conversion, and breach of contract, among others. MobileCare intervened in this suit on April 15, 2010.

This matter comes before the court on the parties' cross motions for summary judgment. (ECF Nos. 74, 75.) Trenery and Mobilecare move for summary judgment

pursuant to the last-man-standing provision found in paragraph 6.3 of Mobile Care's Operating Agreement ("Operating Agreement"). Georgia Bank moves for summary judgment on Trenery's counterclaims, contending that (1) Trenery lacks standing; (2) Mobilecare's claims are barred by the statute of limitations; and (3) the remaining claims lack evidentiary support. Georgia Bank also moves for summary judgment on its claim for indemnification under the Operating Agreement. Both motions have been fully briefed and the court heard oral argument at an August 16, 2010 hearing. This order serves to announce the rulings of the court.

I.  Factual and Procedural Background

MobileCare was formed in 1999 to provide ambulance and medical transportation services. Its Operating Agreement was executed on July 9, 1999, and provided that McPherson would serve as the managing member, a position he held until his death on March 18, 2007. Trenery became a member of MobileCare on September 1, 1999. Mobilecare sold its asserts to Medcare in March of 2006 for $1,375,000, which was allocated as follows: (1) $345,668.67 in cash at closing; (2) $392,142.07 as an assumption of debt owed BB&T; (3) $39,236.80 as an assumption of debt owed Ford; and (4) 597,952.46 to bear interest and be paid to MobileCare in equal monthly installments over a term of five years. At the time of the asset sale, Mobilecare's membership comprised of Trenery, McPherson, and Derek Fowkes ("Fowkes"). After the asset sale, Mobilecare existed solely for the purpose of receiving payments from Medcare and distributing such payments to its members.

By separate agreement, Fowkes no longer holds any interest in MobileCare.

This case arises out of a dispute between Trenery, the sole remaining member of MobileCare and Georgia Bank, McPherson's successor and the personal representative of his estate.. Georgia Bank filed suit on June 30, 2008, alleging that Trenery improperly retained McPherson's share of the distributions and that Trenery absconded with all books and records relating to MobileCare in an effort to conceal his actions. Trenery counterclaimed, asserting that McPherson improperly took and used MobileCare monies for personal benefit without the knowledge of MobileCare or its other members. Trenery also alleged McPherson's mismanagement of Mobilecare, including his alleged failure to satisfy tax obligations, has damaged Trenery to the extent that he has had to meet certain obligations.

II.  Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis omitted). A fact is material if proof of its existence or non-existence would affect

the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue is genuine if the evidence offered is such that a reasonable jury might return a verdict for the nonmoving party. Id. at 257. In cases where the parties dispute material facts, "the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995). Moreover, the court "may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

When considering cross motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). The court must endeavor to resolve factual disputes and competing inferences in favor of the party opposing each motion. Id.

III. Discussion

Trenery moves for summary judgment on the basis that Georgia Bank lacks any claim to Mobilecare assets due to a last-man-standing provision in the Operating Agreement. Georgia Bank moves for summary judgment on Trenery's counterclaims on the basis that Trenery lacks standing, his claims lack evidentiary support, and Mobilecare's claims fall outside the statute of limitations. Georgia Bank also seeks to establish the applicable statute of limitations.

A.  Trenery's Motion for Summary Judgment

Trenery and Mobilecare contend that pursuant to paragraphs 6.1 and 6.3 of the Operating Agreement, the estate of McPherson may only become an "Interest Holder" in Mobilecare if accepted by the remaining "Members," in this case Trenery. Trenery asserts that because he has not accepted McPherson's estate as an "Interest Holder" or "Member," Georgia Bank is a stranger to the Operating Agreement and its claims fail as a matter of law.

1.  Applicable Law

As this is a diversity action, the court must first determine the applicable law. South Carolina follows the doctrine of lex loci contractu in interpreting and giving effect to contracts. Livingston v. Atl. Coast Line R.R. Co., 180 S.E. 343, 345 (S.C. 1935). Here, the relevant contract, the Operating Agreement, was executed in the State of Georgia and the agreement itself provides that Georgia law applies. Accordingly, the court will apply the substantive law of Georgia in construing the Operating Agreement.

In determining the legal relationship between the parties, South Carolina choice of law provisions provide that "the law . . . under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its managers, members, and their transferees." S.C. Code Ann. § 33-44-1001(a) (2006); see, e.g., First Nat'l City Bank v. Banco Para El Comercio Exterio de Cuba, 462 U.S. 611, 621 (1983) ("As a general matter, the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation."). The succession and acceptance of members to an

5

LLC involves an entity's internal affairs. See, e.g., Multi-Media Holdings v. Piedmont Center, 15 LLC, 583 S.E.2d 262, 265 (Ga. App. 2003) ("Internal affairs are those that concern the relations inter se of the corporation, its shareholders, directors, officers or agents." (internal punctuation and citation omitted)). Mobilecare was organized in Georgia and the court will apply Georgia law to claims involving its internal affairs.

The operating agreement of an LLC is a contract. See, e.g., ULQ, LLC v. Meder, 666 S.E.2d 713, 716 (Ga. App. 2008). The cardinal rule of contract construction is to ascertain the intention of the parties. Tillman Park v. Dabbs-Williams Gen. Contrs., 679 S.E.2d 67, 70 (Ga. App. 2009); Mountain Aire Realty v. Birdie White Enterprises, 593 S.E.2d 900 (Ga. App. 2004). To that end, Georgia employs a tripartite analysis: First, if no ambiguity appears, the court must enforce the contact according to its clear and unambiguous terms irrespective of all technical or arbitrary rules of construction. Tillman Park, 679 S.E.2d at 70. Second, if ambiguity lurks, its presence or absence is a question of law. Third, a question of fact arises only where an ambiguity cannot be negated by application of the statutory rules of construction. Id.

The rules of contruction require that the court determine the intent of the parties from the entire agreement and interpret each agreement provision to harmonize with the others. Id. A contract is not ambiguous "unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two possible meanings represents the true intention of the parties." Crooks v. Crim, 285 S.E.2d 84, 87 (Ga. App. 1981). "However,

6

no construction is required or even permissible when the language employed by the parties in the contract is plain, unambiguous and capable of only one reasonable interpretation." Id.

2. The Operating Agreement

Trenery contends that because McPherson died, application of the plain terms of the Operating Agreement effected his withdrawal from the membership of Mobilecare and the forfeiture of his entire interest therein. At issue is paragraph 6.3 of the Operating Agreement. It reads, in its entirety, as follows:

> Immediately upon the occurrence of an Involuntary Withdrawal, the successor of the Withdrawn Member, but only if accepted by the remaining Members, shall thereupon become an Interest Holder, but shall not become a Member. If the Company is continued as provided in Section 7.1.3, the successor Interest Holder shall have the rights of an interest holder but shall not be entitled to receive in liquidation of the Interest the fair market value of the Member's Interest as of the date the Member involuntarily withdrew from the Company. In lieu of a successor for a Member involuntarily withdrawing according to the agreement, the Withdrawn Member's percentage interest in the Company may in the remaining Member's sole discretion, be forfeited to the remaining Member whose percentage interest may increased thereto.

(Defs.' Mot. Summ. J., ECF. No. 75 Ex. 1 ¶ 6.3.) Pursuant to the operating agreement, an "Involuntary Withdrawal" encompasses a Member's death. (Id. ¶ Art. I.) A "Member" is defined as "each Person signing [the Operating Agreement] and any Person who is admitted as a member of the Company." (Id.) An "Interest Holder" is "any Person who holds an Interest, whether as a Member or as an unadmitted assignee of a Member."[1] (Id.)

The first sentence of paragraph 6.3 requires the successor of a withdrawn Member to

---

[1] The court will use the terms "Member" and "Interest Holder" as they are defined in the above paragraph pursuant to the Operating Agreement.

obtain the consent of the remaining Members to become an Interest Holder. The last sentence requires the withdrawn Member's interest in Mobilecare to flow to the remaining Members in the absence of a successor. However, the term "successor" is not defined, and it is clear that a successor is something different from an Interest Holder or a Member. In this case it would seem that McPherson's estate, while not an Interest Holder or Member by virtue of the absence of Trenery's assent, is McPherson's successor, if nothing else.

The plain terms of the contract only allow a Member's interest to cede to the remaining members in the absence of a successor. Here, the estate is the successor to McPherson's interest and its existence precludes Trenery from laying claim to McPherson's interest. This conclusion, though inescapable, does violence to the inner harmony of the Operating Agreement. The problem is that the existence of the successor prevents a remaining MobileCare Member from obtaining the interest of the Withdrawn Member, but makes no provision for the Withdrawn Member's interest. The court finds that such a reading leads to an unreasonable and absurd result, whereby half of MobileCare's cash flows would be caught in a twightlight zone where neither McPherson's successor nor Trenery could rightfully claim them. See Tudor v. Am. Emp. Ins. Co., 173 S.E.2d 403, 405 (Ga. Ct. App. 1970).

Taking the contract as a whole, the Operating Agreement evinces an overriding intent to distribute MobileCare cash flow based on a "Percentage" memorialized from time to time in an amendment to the Operating Agreement. The Operating Agreement is equally clear

8

that the Percentage can only be changed by agreement of the Members or by operation of paragraph 6.3 (when no successor is forthcoming). Article I of the agreement requires that one be an Interest Holder to obtain his percentage of cash flows.

Georgia law provides that, in construing the terms of a contract, "[t]he rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be transposed, and conjunctions substituted for each other. In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied." Ga. Code Ann. § 13-2-2(6). The Georgia Court of Appeals has cautioned, however, that "[a] contract should not be torn apart and construed in pieces, but the court should look to the entire instrument and so construe it as to reconcile its different parts and reject a construction which leads to contradiction, in order to ascertain the true intention of the parties, which is the real purpose of the judicial construction of contracts." Connell v. Guarantee Trust Life Ins. Co., 541 S.E.2d 403, 405 (Ga. Ct. App. 2000).

Though reluctant to rewrite the Operating Agreement on general principle, the court has come to the conclusion that its contradictory terms require the type of judicial construction envisioned in section 13-2-2. Accordingly, under the authority provided by section 13-2-2, to effectuate the intent of the parties as manifested in the entirety of the Operating Agreement, and to avoid contradiction, the court finds, ineluctably, that the first sentence of paragraph 6.3 must be reformed. See Ardis v. Printup, 1869 WL 1711 (Ga. 1869) ("[I]f we substitute the word or for the words and also, italicised above, all difficulty

9

is removed, and the intention of the parties, as we gather it from the whole instrument, is carried into effect . . . ."). Substituting the conjunction "and" for "but" and moving the consent requirement to the end of the first sentence, Paragraph 6.3 shall now read:

> Immediately upon the occurrence of an Involuntary Withdrawal, the successor of the Withdrawn Member shall thereupon become an Interest Holder, <u>and</u> shall not become a Member, <u>unless accepted by the other Members</u>. If the Company is continued as provided in Section 7.1.3, the successor Interest Holder shall have the rights of an interest holder but shall not be entitled to receive in liquidation of the Interest the fair market value of the Member's Interest as of the date the Member involuntarily withdrew from the Company. In lieu of a successor for a Member involuntarily withdrawing according to the agreement, the Withdrawn Member's percentage interest in the Company may in the remaining Member's sole discretion, be forfeited to the remaining Member whose percentage interest may increased thereto.

By providing for the successor of the Withdrawing Member to become an interest holder, the contract provides a destination for the yearly distribution of cash flows as required by paragraph 4.1 and a method for allocating the assets of MobileCare in liquidation pursuant to paragraph 4.4.1. Georgia Bank is now an Interest Holder under the Operating Agreement. The court hereby denies Trenery's motion for summary judgment.

B.     Georgia Bank's Motion for Summary Judgment

Georgia Bank moves for summary judgment on ten grounds. Specifically, Georgia Bank contends: (1) that Trenery lacks standing to assert his counterclaims individually; (2) that the Mobilecare counterclaims for conversion, breach of contract, breach of fiduciary duty, and recoupment are barred in whole or in part by the relevant statute of limitations; (3) that Trenery's counterclaims are barred by the statute of limitations to the extent they seek

individual recovery; (4) that any counterclaim for misappropriation of funds by McPherson must be dismissed for lack of evidence; (5) that any counterclaim for mismanagement of funds by McPherson must be dismissed for lack of evidence; (6) that the conversion claim must be dismissed for failure to state a claim applicable to the facts of the case; (7) that the quantum meruit claim must be dismissed for lack of standing because Trenery did not confer a benefit on McPherson; (8) that the counterclaim for claim and delivery lacks evidentiary support; (9) that the counterclaim for an accounting is moot; and (10) that Georgia Bank is entitled to indemnification under the Operating Agreement.

    1.    Standing

Trenery has asserted counterclaims for conversion, breach of contract, breach of fiduciary duty, and recoupment, among others. However, Georgia Bank contends that each of the foregoing claims involve injury to MobileCare, not Trenery, and that Trenery lacks standing to bring them. Pursuant to Georgia law, when a member or shareholder sues a corporation for breach of fiduciary duties owed a corporation, generally it must do so derivatively or on behalf of the corporation. Phonex Airline Serv's v. Metro Airlines, 397 S.E.2d 699 (Ga. 1990). A direct action is only appropriate where a shareholder alleges special injury separate and apart from that suffered by the other shareholders, or where a suit alleges breach of a contract right apart from any right of the corporation. Grace Bros. Ltd. v. Farley Indus., 450 S.E.2d 814 (Ga. 1994). However, an exception to this general rule applies where a suit involves a closely-held corporation and the facts do not implicate the

11

traditional policy goals that favor derivative suit. Stoker, 615 S.E.2d 1, 7 (Ga. App. 2005) rev'd in part by 631 S.E.2d 693 (Ga. 2006). Stoker identified those goals as (1) preventing multiple suits by shareholders; (2) protection of corporate creditors by ensuring that any recovery goes to the corporation; (3) prevention of prejudice to other shareholders by letting one or a few shareholders recovery; and (4) ensuring adequate compensation to injured shareholders by increasing the value of their aliquot shares. Id.

Georgia Bank asserts that the majority of the wrongs for which Trenery seeks a remedy are wrongs against the corporation that he lacks standing to assert, relying on the general rule against direct suit. Trenery contends, however, that because MobileCare was a closely held LLC and because none of the Stoker factors are present, he should be permitted to avail himself of the Stoker exception. However, the parties both agree that the Internal Revenue Service ("IRS") is a creditor ($268,140 in back taxes) of Mobilecare, and that MobileCare does not have sufficient assets to pay the entire $268,140.

Somewhat creatively, Trenery suggests that, because McPherson was the "responsible person," McPherson's estate should be required to pay $107,458 of the $268,140, and that MobileCare should be responsible for only the balance of $160, 682. Trenery represents that MobileCare has assets of $198,796 available to pay the IRS, which would leave a balance of approximately $38,000. In Trenery's view, the IRS would not be prejudiced by a direct action because there are sufficient assets to satisfy the interest and penalties, even if the IRS would have to go to two sources to obtain the back taxes.

12

Georgia Bank argues that the IRS's creditor status precludes direct suit. The court agrees. Though perhaps more resourceful and tenacious than other creditors, the IRS would face prejudice from an individual recovery by Trenery. To wit, the IRS would need to show that a "'responsible person' willfully failed to perform a duty to collect, account, or pay over the taxes" owed. Lostocco v. D'Eramo, 518 S.E.2d 690 693 (Ga. Ct. App. 1999). To allow direct suit would prejudice the IRS to the extent that it would require the IRS to pursue an estate which may or may not have sufficient funds to satisfy the obligation and would also require the IRS to establish wilfulness on the part of McPherson prior to any recovery. Neither hurdle comes in to play if MobileCare is required to bring suit in its own name. Accordingly, the court finds that the presence of the IRS as a creditor and MobileCare's lack of funds to satisfy its obligation precludes the availability of the Stoker exception.

2. The Statute of Limitations

As jurisdiction in this case is based on diversity of citizenship, the court must apply the conflict of laws rules of the forum state, South Carolina. Klaxton Co. v. Stentor Co., 313 U.S. 487 (1941); Guaranty Trust Co. v. York, 326 U.S. 99 (1945) (federal court must apply state statute of limitation). Under the applicable South Carolina choice of law rule, lex fori, South Carolina generally applies its own statute of limitations. See State v. So. Farm Bureau Life Ins. Co., 219 S.E.2d 80, 85 (S.C. 1975); but see Hughes v. Doe, 316 S.E.2d 383 (S.C. 1984) and Taylor v. Murray, 204 S.E.2d 747 (Ga. 1974) (applying two-year limitation of action for wrongful death where it is a substantive provision of state statute). See also

Hunter v. Johnson, 376 S.E.2d 371 (Ga. 1989) ("Statutes of limitation look only to the remedy and so are procedural."). This is true for actions sounding in both contract and tort. Caldwell v. Seaboard Air Line Ry., 53 S.E. 746, 754 (S.C. 1906) ("Matters bearing upon the execution, the interpretation, or validity of a contract are determined by the law of the place where the contract is made. Matters connected with its performance are regulated by the law prevailing at the place of performance. Matters respecting the remedy, such as bringing of suits, admissibility of evidence, statutes of limitation, depend upon the law of the place where the suit is brought.").

Generally, in South Carolina, a plaintiff has three years from the time he knew or should have known he had a cause of action to bring suit. S.C. Code Ann. § 15-3-530. Maher v. Tietex Corp., 500 S.E.2d 204 (S.C. Ct. App. 1998) ("Pursuant to the discovery rule, a breach of contract action accrues not on the date of the breach, but rather on the date the aggrieved party either discovered the breach, or could or should have discovered the breach through the exercise of reasonable diligence."). A cause of action should have been discovered through exercise of reasonable diligence when the facts and circumstances would have put a person of common knowledge and experience on notice that some right had been invaded or a claim against another party might exist. Benton v. Roger C. Peace Hosp., 443 S.E.2d 537 (1994).

                a.       MobileCare's Counterclaims and the Statute of Limitations

The parties entered into a tolling agreement on March 16, 2010. Because a three-year

statute of limitations applies to all of MobileCare's claims, no claims that MobileCare knew of, or should have known of, prior to March 16, 2007, are actionable.

      b.  Trenery's Counterclaims and the Statute of Limitations

Trenery asserted his compulsory counterclaims on July 21, 2008 (ECF No. 7.) in response to Georgia Bank's complaint filed June 30, 2008. Burlington Indus. v. Milliken & Co., 690 F.2d 380 (4th Cir. 1982) ("[T]he institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim"); but see Whitfield Const. Co. v. Bank of Tokyo Trust Co., 525 S.E.2d 888 (S.C. Ct. App. 1999) (where counterclaim not included in original responsive pleading, later amendment did not relate back). Trenery contends, however, that the discovery rule and the doctrine of adverse domination should provide for larger limitations period. Georgia Bank argues that because Trenery had access to all of Mobilecare's books, he was on notice of any claims arising out of McPherson's financial management of MobileCare. In support, Georgia Bank cites Berry v. Mcleod for the proposition that inquiry notice will suffice. 492 S.E.2d 794 (1997). Berry dealt with a challenge to a bond issue and the court seemed to be talking about the situation where documents are required to be filed on the public record in conformance with a statute. Id. at 799–800.

The instant matter does not involve documents on the public record filed in conformance with a statute. However, it does involve the analogous situation of a corporate document maintained in conformance with a contract to which Trenery, the counterclaimant,

is a party vested with the right to inspect the corporate books pursuant to paragraph 8.1 of the Operating Agreement. After reviewing the briefs and the relevant caselaw, the court finds that the better rule holds that a contract right to LLC information is sufficient to charge Trenery with constructive notice of a claim. Accordingly, the relevant cut-off date for Trenery's claims is June 30, 2005.

3. Misappropriation of Funds and Mismanagement Counterclaims

Georgia Bank asserts that Trenery has failed to put forth sufficient factual matter to establish that McPherson misappropriated funds or to establish that McPherson mismanaged the MobileCare. However, the court finds that genuine issues of material fact preclude summary judgment as to each of these claims.

4. Counterclaim for Conversion

Conversion is "the unauthorized assumption in the exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the owner's rights." SSI Med. Serv's, Inc. v. Cox, 392 S.E.2d 789, 792 (S.C. 1990). Georgia Bank asserts that conversion is inappropriate because the money allegedly converted has not been identified with sufficient specificity. Its argument is that because the money was not separately maintained (that it was commingled) it could not be converted. Trenery argues that the sums are determinable and definite, and therefore susceptible of a claim for conversion. The court agrees with Trenery. However, the court finds that this claim must be brought by MobileCare, as any monies allegedly converted would have come from MobileCare, and not

16

Trenery. The court also finds the cases cited by Georgia Bank inapposite for the reasons detailed in Trenery and MobileCare's response. At bottom, the conversion counterclaim seeks a definite sum of money allegedly converted by an individual. In that circumstance a conversion claim is proper. See Cox, 392 S.E.2d at 792 ("Money may be the subject of conversion when it is capable of being identified.").

    5.    Counterclaim for Quantum Meruit

Georgia Bank argues that Trenery's claim for quantum meruit must be against Mobilecare, not McPherson's estate. To recover pursuant to a theory of quantum meruit, a claimant must show: (1) his performance as agent of services valuable to the defendant; (2) either at defendant's request or knowingly accepted by the defendant; (3) defendant's receipt of which without compensating claimant would be unjust; and (4) claimant's expectation of compensation when the services were rendered. Razavi v. Shackelford, 580 S.E.2d 253 (Ga. Ct. App. 2003). Trenery contends that he is entitled to payment for services rendered to MobileCare subsequent to the death of McPherson. However, even assuming Trenery's acts went uncompensated, Trenery fails to show how such services were valuable to Georgia Bank rather than MobileCare. Accordingly, Trenery's claim for quantum meruit against Georgia Bank is dismissed with prejudice.

    6.    Counterclaims for Claim and Delivery and an Accounting

In its response, Trenery abandoned his demand for claim and delivery and both parties agree that an accounting is no longer necessary or desirable. Accordingly, these claims are

dismissed without prejudice.

       7.      Indemnification of Georgia Bank under the Operating Agreement

Georgia Bank asserts that paragraph 5.5 of the Operating Agreement provides that each manager shall be indemnified by Mobilecare for acts within the scope of their authority excepts for willful misconduct or gross negligence. Georgia Bank contends that there is no evidence of willful or grossly negligent conduct and that it is therefore entitled to indemnification. Trenery contends that Georgia Bank is not entitled to indemnification because the acts and omissions of McPherson constitute gross negligence, were not the in the scope of McPherson's authority, and were not in the best interests of Mobilecare. The court finds that genuine issues of material fact preclude summary judgment on this issue.

IV.    Conclusion

Because the court finds that the Operating Agreement clearly evidences the parties' intent to avoid forfeiture in the event of a successor, and because a successor is different from an "Interest Holder" or a "Member," Trenery and MobileCare's motion for summary judgment is denied. Turning to Georgia Bank's motion for summary judgment, the court finds (1) that the IRS constitutes a creditor pursuant to Stoker, precluding direct suit by Trenery; (2) that the three-year South Carolina statute of limitations applies to all claims, and that no causes of action arising prior to June 30, 2005, are actionable by Trenery, and none prior to March 16, 2007, are actionable by MobileCare; (3) that genuine issues of material fact preclude summary judgment on the misappropriation and mismanagement

counterclaims; (4) that genuine issues of material fact preclude summary judgment on Georgia Bank's claim for indemnification; (5) that the quantum meruit counterclaim against Georgia Bank should be dismissed with prejudice; (6) that Trenery lacks standing to bring the conversion counterclaim; and (7) that the counterclaims for an accounting and claim and delivery are moot.

The trial in this matter shall take place on September 27, 2010.

IT IS SO ORDERED.

August 17, 2010
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge